# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEFRY JOSUE DEL CID DEL  )
CID and MARLON LETONA  )
MARROQUIN MARROQUIN,  )
          )
  Petitioners,    )
 v.        )  Case No. 3:25-cv-00304
          )  Judge Stephanie L. Haines
PAMELA BONDI, *Attorney*  )
*General of the United States,* )
*In Her Official Capacity,*  )
          )
  Respondents.   )

## OPINION

Petitioners Jefry Josue Del Cid Del Cid ("Mr. Del Cid") and Marlon Letona Marroquin Marroquin ("Mr. Marroquin") (collectively, "Petitioners") have both been granted Special Immigrant Juvenile Status ("SIJ Status" or "SIJS") in accordance with legal process. Petitioners have filed a habeas petition, naming as Respondents: Pameli Bondi, Attorney General of the United States; Sirce E. Owen, acting director of the Executive Office for Immigration Review (the "EIOR"); the EIOR; Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); DHS; Todd Lyons, acting director of U.S. Immigration and Customs Enforcement ("ICE"); ICE; Joseph B. Edlow, director of U.S. Citizenship and Immigration Services ("USCIS"); USCIS; Brian McShane, director of the Philadelphia Field Office of ICE's Enforcement and Removal Operations Division; and Leonard Oddo, the warden of Moshannon Valley Processing Center ("MVPC") (collectively, "Respondents"). Mr. Marroquin is currently detained at MVPC—the same location where Mr. Del Cid was detained until his recent release from immigration custody.

Currently pending before the Court is Petitioners' Motion for a Preliminary Injunction. (ECF No. 16). Broadly speaking, Petitioners contend that their SIJ Status entitles them to certain

legal protections that Respondents are not affording them. Specifically, Petitioners argue that Respondents are (in the case of Mr. Marroquin) or were (in the case of Mr. Del Cid) errantly deeming them subject to mandatory detention under 8 U.S.C. § 1225 ("§ 1225"), and that Respondents must instead deem them subject to detention under 8 U.S.C. § 1226(a) ("§ 1226(a)"), which would permit them to seek release on bond. They therefore request several forms of relief from this Court. (ECF No. 16 at 3–4).

As the Court has previously explained, its unflagging obligation is to apply the law as written. *A.S.R. v. Trump*, 782 F. Supp. 3d 224, 253 (W.D. Pa. 2025). When the Court does so, it finds that the law affords Petitioners an opportunity to seek adjustment of status to that of lawful permanent residents, *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 433 n.12 (3d Cir. 2023), and the Court relatedly finds that the law affords Petitioners an *opportunity* to be granted bond pending their removal proceedings. 8 U.S.C. § 1226(a). The Court therefore GRANTS Petitioners' request for a preliminary injunction insofar as the Court: (1) finds that Mr. Marroquin cannot currently be detained pursuant to § 1225, but rather is detained pursuant to § 1226(a)[1] and (2) orders that Respondents afford Mr. Marroquin a bond hearing pursuant to § 1226(a) and all related provisions of law within seven (7) days.[2] The Court DENIES Petitioners' other requests for injunctive relief.[3]

---

[1] Likewise, in the event that Mr. Del Cid is re-detained in the future, and in the event that his factual circumstances are the same at that time as they are now (i.e., he is still an SIJ beneficiary and he still has no criminal record), the Court finds that he may not be detained pursuant to § 1225 but rather must be detained (if at all) under § 1226(a).

[2] In the event that Respondents re-detain Mr. Del Cid in the future, and in the event that he still has SIJ Status and no criminal record at that time, Respondents shall likewise provide him with a bond hearing under § 1226(a) and all related legal principles within seven (7) days of his re-detention.

[3] The Court notes that Petitioners are seeking a declaratory judgment from the Court. (*See, e.g.*, ECF No. 16 at 20). The Declaratory Judgment Act ("DJA"):

> [A]uthorizes the court in a case of actual controversy within the court's jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," and "such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201. The DJA "permits a federal court the discretion to 'declare the rights and other legal relations of any interested party seeking

# I.    Background

This case is primarily about the legal protections due to individuals who have been granted SIJ Status and who have no criminal history, such as Petitioners here. The Court therefore begins by explaining certain legal provisions and developments that have significant bearing on Petitioners' claims. The Court then overviews the factual history and procedural background germane to Petitioners' requests.

## A.    Legal Background

### 1.  The Contours of SIJ Status

#### a.    SIJ Status in General

At the outset, the Court offers the following background regarding SIJ Status in general:

> Congress established SIJ [S]tatus in 1990 in order to "protect abused, neglected or abandoned children who, with their families, illegally entered the United States," *Yeboah v. U.S. Dep't of Justice*, 345 F.3d 216, 221 (3d Cir. 2003); 8 U.S.C. § 1101(a)(27)(J), and it entrusted the review of SIJ petitions to USCIS, a component of DHS.

> Alien children may receive SIJ [S]tatus only after satisfying a set of rigorous, congressionally defined eligibility criteria, including that a juvenile court find it would not be in the child's best interest to return to her country of last habitual residence and that the child is dependent on the court or placed in the custody of the state or someone appointed by the state. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c). The child must also receive approval from USCIS and the consent of the Secretary of Homeland Security to obtain the status. 8 U.S.C. § 1101(a)(27)(J).

---

such declaration,' when there is a 'case of actual controversy.'" *Abraham v. Del. Dep't of Corr.*, 331 F. App'x 929, 931 (3d Cir. 2009) (quoting 28 U.S.C. § 2201). In determining whether a declaratory action is sufficiently ripe to constitute a "controversy," the Third Circuit instructs that courts focus on the following factors: (1) "the adversity of the interests of the parties;" (2) "the conclusiveness of the judicial judgment;" and (3) "the practical help, or utility, of that judgment." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (citation omitted).

*LVL Co., LLC v. Atiyeh*, 469 F. Supp. 3d 390, 425–26 (E.D. Pa. 2020). While this standard may well be met in this case, the parties have not developed this issue in their briefing relative to Petitioners' Motion for a Preliminary Injunction. (ECF Nos. 16, 17). The Court therefore declines to enter an order that has the "force and effect of a final judgment" at this juncture. Instead, the Court today enters *preliminary* injunctive relief and will permit the parties to provide argument regarding how this case should progress moving forward.

Once attained, SIJ classification conveys a host of important benefits. For purposes of 8 U.S.C. § 1255(a), which describes adjustment of status, SIJ designees are "deemed ... to have been paroled into the United States." 8 U.S.C. § 1225(h)(1). Moreover, the INA automatically exempts SIJ designees from a set of generally applicable grounds of inadmissibility and provides that other grounds of inadmissibility also may be waived at the Attorney General's discretion. 8 U.S.C. §§ 1255(h)(2), 1182(a). Of particular note, the [Immigration and Nationality Act (the "INA")] exempts SIJ designees from inadmissibility based on the lack of "valid entry document[s.]" *Id.* § 1182(a)(7)(A)(i)(l). Additionally, Congress has granted SIJ designees various forms of support within the United States, such as access to federally funded educational programming and preferential status when seeking employment-based visas. *See id.* §§ 1232(d)(4)(A), 1153(b)(4).

Finally, SIJ [S]tatus, once granted, may not be revoked except "on notice," 8 C.F.R. § 205.2, and upon the Government's compliance with a series of procedural safeguards: The Secretary of Homeland Security must find "good and sufficient cause" for revocation; the agency must provide notice of intent to revoke; and the SIJ designee must be given the opportunity to present evidence opposing revocation. 8 U.S.C. § 1155; 8 C.F.R. § 205.2.

*Osorio-Martinez v. Att'y Gen. U.S.*, 893 F.3d 153, 163–64 (3d Cir. 2018) (cleaned up).

Because of the "statutory and constitutional rights of SIJ designees[,]" the *Osorio-Martinez* Court awarded the petitioners before it, who were individuals with SIJ Status and whom the Government was seeking to remove via expedited orders of removal, temporary injunctive relief as against those orders. *Id.* at 178–79.

    **b.**    **SIJ Status and Its Relationship to Lawful Permanent Residency**

As the Third Circuit's discussion in *Osorio-Martinez* makes clear, SIJ Status has significant bearing on an individual's ability to apply for lawful permanent resident ("LPR") status. That is because, generally speaking, an alien must be "admitted or paroled into the United States" before applying for adjustment to LPR status. *Osorio-Martinez*, 893 F.3d at 171 n.14 (citing 8 U.S.C. § 1255(h)(1), 1255(g)). However, Congress provided aliens seeking SIJ Status with special benefits in seeking adjustment of status. Congress did so via § 1255, which provides, in relevant part, that:

(a) The status of an alien who was … paroled into the United States [may be adjusted to legal permanent resident] … if [certain requirements are met, including that] the alien is … admissible to the United States for permanent residence[.]

…

(h) In applying this section to a special immigrant …

> (1) such an immigrant shall be deemed, for purposes of subsection (a), to have been paroled into the United States; and

> (2) in determining the alien's admissibility as an immigrant—

>> (A) paragraph[] … (6)(A) … of section 1182(a) of this title shall not apply[.]

8 U.S.C. § 1225(a), (h).

So, then, "SIJ designees [are] 'deemed, for purposes of [adjustment of status to lawful permanent resident under § 1255(a)], to have been paroled into the United States,' 8 U.S.C. § 1255(h)(1)[.]" *Osorio-Martinez*, 893 F.3d at 170–71. Congress also "enlarged the chance that [individuals with SIJ Status will be] successful in their applications for adjustment by exempting them from a host of grounds that would otherwise render them inadmissible[.]" *Id.* at 171. Clearly, individuals with SIJ Status are exempted from inadmissibility on those grounds *insofar as their adjustment of status is concerned*. But are they also exempted from inadmissibility on those grounds *insofar as their potential removal from the country is concerned*? The Third Circuit left that question open in *Osorio-Martinez*, *see id.* at 171 n.14, and ultimately answered it in the negative in *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429 (3d Cir. 2023), the case to which the Court now turns.

### c.    Individuals with SIJ Status Are Not Thereby Exempted from Removal Altogether

In *Cortez-Amador*, the petitioner argued to the Third Circuit that "special immigrants such as himself *are exempt from removal under 8 U.S.C. § 1182(a)(6)(A)(i)*" because the "plain

language of 8 U.S.C. § 1255(h)(2) clearly states that 8 U.S.C. § 1182(a)(6)(A)(i)—which permits the removal of immigrants present without admission or parole—does not apply to [an immigrant with SIJ Status]." *Cortez-Amador*, 66 F.4th at 432 (emphasis added). The respondents countered by arguing that the "preface of § 1255(h) limits the scope of subsection (h)(2) to adjudicators 'applying this section,' i.e., *to applications for status adjustment*." *Id.* (emphasis in original).

> Confronted with this dispute, the Third Circuit ruled as follows:

> Section 1255(h) expressly states that a noncitizen with SIJ[ Status] shall be deemed to have been *paroled for purposes of subsection (a)* of that section, i.e., for adjustment of status to a legal permanent resident only. Under normal canons of statutory construction, "courts should construe statutory language to avoid interpretations that would render any phrase superfluous." *U.S. v. Cooper*, 396 F.3d 308, 312 (3d Cir. 2005). The plain language of this subsection applies the "deemed to have been paroled" language *only* to subsection (a) and no other provision of the INA. If we were to read the statute as Petitioner suggests, "for purposes of subsection (a)" would be rendered superfluous. Conversely, if in § 1255(h) Congress had intended a noncitizen with SIJS to be deemed paroled for purposes of removal, it would have included reference to removability or 8 U.S.C. § 1182. Accordingly, the plain language demonstrates that Petitioner is removable despite his SIJS[.]

*Cortez-Amador*, 66 F.4th at 433 (cleaned up); *see also id.* at 433 n.11 ("Congress could have rationally decided that SIJS recipients should be given the opportunity to apply for adjustment of status, while also contemplating that they may be removed if their application is denied or for another appropriate basis."). Further, the *Cortez-Amador* Court explained that "*Osorio-Martinez* [was] distinguishable because the Court [there] did not hold that SIJS recipients are exempt from removal due to inadmissibility, but only that Congress intended to provide SIJS recipients with an opportunity to pursue adjustment of status." *Id.* at 433 n.12.

In short, based on the foregoing, two legal principles emerge relevant to individuals with SIJ Status. First, the Government must provide them an opportunity to pursue adjustment of status, and the way in which the Government seeks to remove them must adequately take stock of their

SIJ Status. *See Osorio-Martinez*, 893 F.3d 153. Second, the Government may ultimately remove an individual with SIJ Status from the country, so long as it complies with the first principle. *Cortez-Amador*, 66 F.4th 429; *see also Benito Vasquez v. Moniz*, 788 F. Supp. 3d 177, 181 (D. Mass. 2025) ("Other federal courts have routinely recognized that SIJ [S]tatus alone does not render an alien lawfully present in  the country … nor does it prevent the government from affecting his removal."); *Cruz-Gonzalez on behalf of D.M.S.C. v. Kelly*, No. 16-CV-5727, 2017 WL 3390234, at *6 (E.D. Pa. Aug. 7, 2017) ("Additionally, Cruz-Gonzalez's SIJ [S]tatus does not change our analysis and the SIJ designation itself provides no separate basis to review their removal.") (cleaned up).

With those principles in place, the Court proceeds to consider 8 U.S.C. §§ 1225 and 1226 because they are the specific provisions of law that are especially germane to Petitioners' detention.

### 2. Sections 1225 and 1226

Turning first to § 1225, the Supreme Court has explained that:

> [The process of beginning to decide who may enter the country and who may stay here after entering] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible. Under § 302, 110 Stat. 3009-579, 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).

> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. *See* § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. *See* § 1225(b)(1)(A)(iii). Section 1252(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). *See* §§ 1225(b)(2)(A), (B).

Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum … or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).

Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); *see also* 8 C.F.R. §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

*Jennings v. Rodriguez*, 583 U.S. 281, 286–88 (2018).

As the foregoing discussion demonstrates, individuals deemed subject to § 1225(b)(1) and (b)(2) are typically detained throughout the removal process.

Shifting to § 1226, the Supreme Court has explained that:

Even once inside the United States, aliens do not have an absolute right to remain here. For example, an alien present in the country may still be removed if he or she falls "within one or more … classes of deportable aliens." § 1227(a). That includes aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission.

Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal. As relevant here, § 1226 distinguishes between two different categories of aliens. Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" an alien detained under § 1226(a) "on … bond" or "conditional parole." *Ibid.*

Section 1226(c), however, carves out a statutory category of aliens who may *not* be released under § 1226(a). Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1). The Attorney General may release aliens in those categories "only if the Attorney General decides ... that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(c)(2). Any release under those narrow conditions "shall take place in accordance with a procedure that considers the severity of the offense committed by the alien." *Ibid.*

In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 288–89 (emphasis in original).

Clearly, the decision of whether an alien is detained pursuant to § 1225, which generally requires detention pending removal, or § 1226(a), which permits the Attorney General to release a detained alien on bond pending the outcome of removal proceedings, is of great consequence to the issue of whether the alien is at liberty pending his removal proceedings.

With that legal framework in place, the Court now overviews recent decisions by the Board of Immigration Appeals (the "BIA") that have bearing on Petitioners' claims.

### 3. Recent Decisions by the BIA

The first relevant decision is the BIA's May 15, 2025, ruling in *Matter of Li*, 29 I. & N. Dec. 66 (BIA 2025), in which the BIA was tasked with resolving an appeal by Q., Li ("Li"). On June 27, 2022, Li "crossed the southern border of the United States without being inspected and admitted or paroled. A [DHS] officer encountered her approximately 5.4 miles away from a designated port of entry and 100 yards north of the border." *Id.* at *67. The officer arrested Li and took her to a processing center. *Id.* DHS then released her the next day on parole, subject to the condition that she was required to regularly report to a DHS field office. *Id.*

On October 30, 2024, "Interpol informed DHS that a Red Notice had been issued seeking [Li's] arrest because she is wanted in Spain for travel document forgery and human smuggling crimes." *Id.* When Respondent "reported to a DHS field office for a scheduled appointment on November 25, 2024, DHS officers took her into custody and issued her a notice to appear for removal proceedings and a notice of custody determination." *Id.* While in custody, Li requested a custody redetermination, which the Immigration Judge denied because he concluded that Li was detained under § 1225(b)(2)(A), and "thus ineligible for release on bond." *Id.*

On appeal, the BIA held that an "applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the INA, 8 U.S.C. § 1225(b)[.]" *Id.* at *69. That applicant for admission is "ineligible for any subsequent release on bond under section 236(a) of the INA, 8 U.S.C. § 1226(a)." *Id.* The BIA therefore dismissed Li's appeal of the Immigration Judge's decision. *Id.* at *71.

The second relevant decision is *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), which the BIA issued on September 5, 2025. Therein, the BIA affirmed the Immigration Judge's determination that "he did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." *Id.* at *220. In doing so, the BIA rejected Respondent Jonathan Javier Yajure Hurtado's ("Hurtado") argument that he was not subject to § 1225(b)(2)(A) because he had been "residing in the interior of the United States for almost 3 years[.]" *Id.* at *221. In rejecting this argument by Hurtado, the BIA reasoned that it "is not supported by the plain language of the

INA, and actually creates a legal conundrum. If he is not admitted to the United States (as he admits) but he is not 'seeking admission' (as he contends), then what is his legal status?" *Id.*

As the foregoing demonstrates, the BIA has recently begun treating aliens arrested within the United States as subject to § 1225 and therefore deciding that they must be detained during their removal proceedings.

### B.    Factual Background

With that legal framework in place, the Court shifts its attention to the factual circumstances surrounding Mr. Del Cid and Mr. Marroquin's entry into the country, SIJ Status, and detention.

Turning first to Mr. Del Cid, Petitioners have supplied the Court with his I-213. (ECF No. 16-2). That document indicates that Mr. Del Cid is currently twenty-one (21) years old. (*Id.* at 3). According to the I-213, Mr. Del Cid "was encountered by Border Patrol Agents on or about July 26, 2021[, at] the El Paso, TX Border Patrol Sector. During that encounter, [he] claimed to be a citizen and national of HONDURAS, without the necessary legal documents to enter, pass through, or remain in the United States." (*Id.*). He further "admitted to illegally crossing the international boundary without being inspected by an immigration officer at a designated Port of Entry." (*Id.*). He was then released to non-detained proceedings on or about July 31, 2021. (*Id.*).

Petitioners have also provided the Court with Mr. Del Cid's I-360. (ECF No. 16-1). That document, which is dated April 18, 2022, indicates that Mr. Del Cid has been afforded SIJ Status and provides the following:

> Your Form I-360 petition has been approved, but you do not yet have a visa available to file an application for adjustment of status. USCIS has determined that you warrant a favorable exercise of discretion to receive deferred action. As a result, you have been placed in deferred action and you may be issued an employment authorization document. Deferred action is an act of administrative convenience to

11

the government which gives some cases lower priority for removal from the United States for a specified period of time.

Your grant of deferred action will remain in effect for a period of four years from the date of this notice unless terminated earlier by USCIS.

(*Id.* at 3).

In terms of Mr. Del Cid's arrest, his I-213 indicates that, on July 13, 2025:

[A]n operation was conducted at 121 South Main Street, Hatfield[,] PA 19440 to locate and arrest subject Edwin GUERRA-MARTINEZ. A male resembling the target was seen leaving the target residence entering a[n] older Ford SUV with Pennsylvania tags. ICE officers in government vehicles followed the subject as [he] left the residence. Approximately 3 minutes after leaving residence, ICE officers initiated a vehicle stop at 1209 School Road, [H]atfield, PA 19440. ICE Officers conducted field interviews with subjects and determined that the subject matching the description of PUAS RAMIREZ [sic] was not in the vehicle but subject [Mr. Del Cid.] This information was provided through his work authorization card, which he handed to ICE Officers when identification was requested. [Mr. Del Cid] was taken into custody and transported to Philadelphia Field Office for processing.

(ECF No. 16-2 at 4). The I-213 charges Mr. Del Cid with being removable under §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). (*Id.* at 5).

On August 6, 2025, an Immigration Judge denied Mr. Del Cid's request for custody redetermination because he found that he lacked jurisdiction under *Matter of Q. Li*, 29 I. & N. 66 (BIA 2025). (ECF No. 16-5 at 3–4). However, at Mr. Del Cid's final removal hearing on September 23, 2025, the Immigration Judge "terminated Mr. Del Cid's removal proceedings without prejudice, and he was subsequently released from immigration detention." (ECF No. 16 at 4–5).

Indeed, Petitioners have submitted the Immigration Judge's Renewed Termination Decision, in which the Immigration Judge terminated the immigration proceedings without prejudice based on "the Court's discretion under 8 C.F.R. § 1003.18(d) in light of the unique circumstances of the case." (ECF No. 16-9 at 3, 5). Specifically, the Immigration Judge considered

"the totality of the circumstances including [Mr. Del Cid's] age at entry … the humanitarian protections Congress built into the SIJS framework, the grant of deferred action, and [] efficiency and docket management concerns[.]" (*Id.* at 5). The Immigration Judge also noted that the "Department of State's October 2025 Via Bulletin reflect[s] movement in the EB-4 category that will materially affect [Mr. Del Cid's] ability to apply for adjustment of status." (*Id.* at 4). Finally, the Immigration Judge noted that Mr. Del Cid has no criminal record. (*Id.*).

Turning to Mr. Marroquin, his I-213 indicates that he is currently twenty (20) years old. (ECF No. 16-4 at 3). Mr. Marroquin entered the United States in March 2023, at which time:

> A Border Patrol Agent encountered [him] in the El Paso, Texas Border Patrol Sector. A Border Patrol Agent determined that [Mr. Marroquin] unlawfully entered the United States from Mexico, at a time and place other than as designated by the Secretary of the Department of Homeland Security of the United States. After determining that [Mr. Marroquin] was an alien who illegally entered the United States, [he] was arrested and transported to the Central Processing Center (CPC) in El Paso, Texas for further processing.

> At the CPC, [he] was advised of [his] administrative rights in removal proceedings. [Mr. Marroquin] acknowledged understanding these rights. [He] claimed to be a citizen and national of Guatemala without the necessary legal documents to enter, pass through, or remain in the United States. [Mr. Marroquin] also admitted to illegally crossing the international boundary without being inspected by an immigration officer at a designated Port of Entry.

(*Id.* at 4). The I-213 further indicates that Mr. Marroquin was to remain at the CPC until placement was obtained. (*Id.* at 5). Finally, the I-213 appears to indicate that Mr. Marroquin does not have a criminal record. (*Id.* at 3).

Petitioners have also provided the Court with Mr. Marroquin's I-360. (ECF No. 16-3). That document was issued on June 4, 2024, and it indicates that he has been afforded SIJ Status. (*Id.* at 3). As with Mr. Del Cid, Mr. Marroquin's I-360 provides that:

> Your Form I-360 petition has been approved, but you do not yet have a visa available to file an application for adjustment of status. USCIS has determined that you warrant a favorable exercise of discretion to receive deferred action. As a result,

you have been placed in deferred action and you may be issued an employment authorization document. Deferred action is an act of administrative convenience to the government which gives some cases lower priority removal from the United States for a specified period of time.

Your grant of deferred action will remain in effect for a period of up to four years from the date of this notice unless terminated earlier by USCIS.

(*Id.*).

According to Petitioners, Mr. Marroquin was "taken into immigration custody and placed into removal proceedings on the detained docket on July 6, 2025." (ECF No. 16 at 5). Respondents represent that ICE officers arrested Mr. Marroquin in Chester, Pennsylvania. (ECF No. 17 at 2).

Petitioners have also provided to the Court the Immigration Judge's July 28, 2025, Order denying Mr. Marroquin's request for a custody redetermination because the Immigration Judge found that he is "subject to mandatory detention due to Matter of Q Li (BIA 2015) and, alternatively, *Jennings v. Rodriguez*[.]" (ECF No. 16-7 at 3) (cleaned up). According to Petitioners, Mr. Marroquin subsequently asked the Immigration Judge to reconsider termination, but the judge again denied Mr. Marroquin's motion based, "in part, on the unavailability of a visa and the need for finality in detained removal proceedings. Mr. Marroquin remains detained at [MVPC.]" (ECF No. 16 at 5). According to Respondents, ICE has charged Mr. Marroquin with being inadmissible pursuant to 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). (ECF No. 17 at 2).

Finally, Petitioners represent that they both have "pending applicants for adjustment of status[.]" (ECF No. 16 at 30).

## C.    Procedural History

Petitioners filed their habeas petition in this matter on September 17, 2025. (ECF No. 1). On September 25, 2025, they filed a Motion for a Temporary Restraining Order ("T.R.O."). (ECF No. 4). Therein, they requested a T.R.O. barring Respondents from: (1) removing them from the

United States, (2) removing them from this jurisdiction during the pendency of this proceeding, and (3) "ordering their immediate release from immigration detention or, in the alternative, directing DHS and EOIR to schedule a custody redetermination hearing before a neutral adjudicator." (*Id.* at 2).

On September 26, 2025, the Court entered an Order granting Petitioners a limited T.R.O.— the Court barred Respondents from removing Petitioners from the country until further order of Court. (ECF No. 6 at 2). However, the Court declined to bar Petitioners' movement to another jurisdiction. (*Id.* at 2 n.2). Finally, the Court found that it could neither grant Petitioners release nor order a custody redetermination without first hearing from Respondents. (*Id.* at 2). The Court therefore set an expedited briefing schedule. (*Id.* at 2–3).

After receiving briefing, the Court entered a Memorandum Order on October 9, 2025, extending its previously-entered T.R.O. barring Respondents from removing Petitioners from the country until October 24, 2025, at 2:15 P.M. (ECF No. 13 at 4). The Court also scheduled a hearing and set a briefing schedule on Petitioners' request for a Preliminary Injunction. (*Id.*).

The Court held a Zoom Preliminary Injunction Hearing on October 15, 2025. (ECF No. 15). On October 17, 2025, Petitioners submitted their Motion for a Preliminary Injunction. (ECF No. 16). Therein, they seek the following five pieces of injunctive relief:

> 1. Immediate release of Mr. Marroquin from immigration detention, or in the alternative, order Respondents to hold a bond hearing within seven days under normal procedures before an impartial adjudicator.
>
> 2. Declare that Petitioners are subject to 8 U.S.C. § 1226 detention rather than § 1225 detention.
>
> 3. Declare that the detention and process that has been applied to Petitioners by Respondents violates the Due Process Clause of the Fifth Amendment of the U.S. Constitution, the [INA], the Administrative Procedures Act [(the "APA")], and their related federal regulations.

4. Declare that Petitioners have a right to remain in the United States to pursue their adjustment of status before an appropriate adjudicator.

5. Issue a stay of removal unless and until visas are available and Petitioners' applications for adjustment of status are processed by Respondents.

(*Id.* at 3–4). On October 20, 2025, Respondents filed their Response in Opposition to Petitioners' Motion for a Preliminary Injunction. (ECF No. 17).

## II.    Threshold Issues

Before addressing the merits of Petitioners' requests for relief, the Court must resolve three threshold issues raised by Respondents—whether Mr. Del Cid's requests satisfy Article III's requirements, whether the Court has jurisdiction to adjudicate this dispute, and whether the Court should require Mr. Marroquin to exhaust his administrative remedies prior to proceeding in front of this Court.

### A.    Mr. Del Cid's Requests Satisfy Article III's Case or Controversy Requirement

Because Respondents have terminated Mr. Del Cid's immigration proceedings without prejudice and have released him from custody, Respondents argue that the Court should dismiss his habeas petition and deny his requests for injunctive relief as moot. (ECF No. 10; ECF No. 17 at 28–29). For the following reasons, the Court holds that Mr. Del Cid's requests continue to satisfy Article III's requirements.

The Third Circuit recently offered the following articulation of the law as it pertains to standing:

> The jurisdiction of the federal courts extends only to "Cases" and "Controversies." U.S. Cont. art. III, § 2. And "[u]nder Article III, a case or controversy can exist only if a plaintiff has standing to sue." *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 286 (3d Cir. 2023) (citation omitted). To establish Article III standing, a [petitioner] must "show that she has suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568

398, 409 (2013)) (cleaned up). The [petitioner] has to satisfy these requirements, which []he must do "for each form of relief that [he] seek[s]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

*Reading v. N. Hanover Twp., N.J.*, 124 F.4th 189, 196 (3d Cir. 2024) (cleaned up).

Here, when Mr. Del Cid filed his habeas petition on September 17, 2025, he possessed SIJ Status, yet Respondents were detaining him at MVPC pursuant to § 1225(b)(2), meaning that they had not afforded him a bond hearing and were continuously refusing to afford him one (all of this constituted a concrete, particularized, and actual or imminent injury fairly traceable to the challenged action). *See supra* Section I.B. Further, Mr. Del Cid sought relief from this Court in the form of a bond hearing pursuant to § 1226(a), among other pieces of relief, which would, if granted by this Court, redress the injury caused by Respondents. (ECF No. 1 at 49–50). Therefore, the Court finds that, at the time Mr. Del Cid filed his habeas petition, he had standing to litigate his claims. *See Gulden v. Exxon Mobil Corp.*, 119 F.4th 299, 306–07 (3d Cir. 2024).

But what about the fact that Mr. Del Cid is no longer detained and therefore no longer inhibited by Respondents from seeking adjustment of status to that of a LPR? Those facts implicate mootness.

As the Third Circuit has explained, the "loss of Article III standing by itself … does not moot a case; the [respondents] must also demonstrate that no mootness exception applies." *Id.* at 305. Indeed, a "case cannot be moot if a [petitioner] establishes Article III standing, and the [respondent] is unable to demonstrate both the loss of standing and the inapplicability of the exceptions to mootness." *Id.*

Therefore, assuming without deciding that Mr. Del Cid's habeas petition and requests for injunctive relief are now moot, the Court inquires whether an exception to mootness applies.

The two most likely potential exceptions here are voluntary cessation and capable of repetition yet evading review. *Id.* at 308. With respect to voluntary cessation, that exception "applies when a [respondent(s)] ceases the allegedly illegal conduct that caused the injury but remains free to return to his old ways." *Id.* (internal quotation marks and citation omitted). The Court holds that that exception is present here.

Indeed, an Immigration Judge, who works within EIOR, *Office of the Chief Immigration Judge*, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, https://www.justice.gov/eoir/office-of-the-chief-immigration-judge (last accessed Oct. 22, 2025), which is one of the named Respondents in this case, terminated Mr. Del Cid's removal proceedings without prejudice. *See supra* Section I.B. Further, Respondents have provided the Court with neither a legal provision nor a sworn declaration indicating that they are unable to re-detain Mr. Del Cid tomorrow. (ECF No. 17 at 28–29). Therefore, because Respondents voluntarily ceased their unlawful conduct in this case but apparently remain free to return to it tomorrow, the Court finds that this exception to mootness is applicable in this case.

The second exception to mootness, capable-of-repetition-yet-evading-review has two prongs. *Guldon*, 119 F.4th at 309. The first—capable-of-repetition—requires "a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party." *Id.* (cleaned up). As the Court explained above, Respondents detained Mr. Del Cid while apparently looking for another individual. *See supra* Section I.B. Thus, even if Respondents are not actively seeking to re-detain Mr. Del Cid at this time, there is a very real chance that they may re-detain him while they enforce immigration policies and laws generally. Further, the BIA has begun to apply § 1225 to aliens arrested within the United States, subjecting them to continued detention during their removal proceedings. *See supra* Section I.A.3. All of this

demonstrates that, in the face of Respondents' concerted effort to enforce immigration policies and laws, Mr. Del Cid has a very real chance of being re-detained in the near future and again subjected to mandatory detention under § 1225. The Court therefore deems the first prong of this exception satisfied.

The second prong—evading-review—requires that the "challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration[.]" *Id.* (cleaned up). As the facts now before the Court demonstrate, Respondents are very much capable of detaining Mr. Del Cid for a fairly significant period of time without bond and then releasing him before the Court renders a reasoned decision on the merits of his claims. *See supra* Section I.B. Nothing in the record indicates that the exact same events that transpired relative to Mr. Del Cid between July and September could not reoccur between November and January. Accordingly, the Court holds that the capable-of-repetition-yet-evading-review exception to mootness likewise applies in this case. *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 227–28 (3d Cir. 2011); *Brown v. U.S. DHS*, 827 F. App'x 174, 175 (3d Cir. 2020) (explaining that *Diop* held that a "noncitizen's release from pre-removal-order custody under 8 U.S.C. § 1226 did not moot his habeas petition where ... there was a non-speculative possibility that the petitioner could be subject to the complained-of detention again" and noting that *Diop* was abrogated in part on other grounds by the Supreme Court in *Jennings*).

In short, for all of the foregoing reasons, the Court finds that the case or controversy requirement is satisfied here. The Court therefore turns its attention to the issue of jurisdiction.

**B.    The Court Has Jurisdiction Over Petitioners' Claims**

Respondents next contend that 8 U.S.C. § 1252(g) bars this Court from exercising jurisdiction over Petitioners' claims. (ECF No. 17 at 18–23). For the following reasons, the Court finds that it does not.

§ 1252(g) provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of this title, no court shall have jurisdiction to hear any cause or claim by or on behalf of an alien arising from the *decision or action* by the Attorney General to *commence proceedings, adjudicate cases, or execute removal orders* against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added).

In *Reno v. Am.-Arab Anti Discrimination Comm.*, 525 U.S. 471 (1999) ("AADC"), the Supreme Court rejected the "unexamined assumption that § 1252(g) covers the universe of deportation claims—that it is a sort of 'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review.'" *AADC*, 525 U.S. at 482. Instead, what § 1252(g) "says is much narrower. That provision only applies to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* (emphasis added). Further, the Supreme Court held that it is "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* Finally, the Supreme Court indicated that § 1252(g) was intended to insulate *executive discretion* in deciding whether or not to undertake those three discrete actions (commencement of proceedings, adjudication of cases, and execution of removal orders). *Id.* at 483–87 (calling § 1252(g) a "discretion-protecting provision"); *see also Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020) ("As the Supreme Court has noted, § 1252(g) was directed against a particular evil: attempts to impose judicial

20

*constraints upon prosecutorial discretion*.") (quotation marks and citation omitted) (emphasis added).

Based on the Supreme Court's decision in *AADC*, the Third Circuit has held that § 1252(g) "'is to be read narrowly and precisely' to prevent review only of the three narrow discretionary decisions or actions referred to in the statute." *Garcia v. Att'y Gen. U.S.*, 553 F.3d 724, 729 (3d Cir. 2009) (finding that § 1252(g) was not implicated where petitioner was "not challenging the discretionary *decision* to commence proceedings, but [was] challenging the government's very *authority* to commence those proceedings after the limitation period [had] expired").

Here, Petitioners are not challenging Respondents' exercise of discretion to commence removal proceedings against them, adjudicate their cases, or execute removal orders (which have not been issued relative to Petitioners). Instead, Petitioners are arguing that Respondents, *having already exercised their discretion* to commence and adjudicate removal proceedings against them, are exceeding their *legal authority* in terms of *how* they conduct those proceedings, given the fact that Petitioners have SIJ Status. (*See* ECF Nos. 1, 16). The Court therefore finds that § 1252(g) does not bar its consideration of Petitioners' claims. *Garcia*, 553 F.3d at 729; *Sean B. v. McAleenan*, 412 F. Supp. 3d 472, 482 (D.N.J. 2019) (finding that § 1252(g) barred consideration of petitioner's claims where he did not "raise any arguments concerning the propriety of his confinement").[4]

---

[4] The Court also observes that the plurality opinion in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), offers additional support for this Court's conclusion in the text above.

In *Jennings*, the plurality stated that it was called upon to "decide 'questions of law,' specifically, whether ... certain statutory provisions require detention without a bond hearing." *Id.* at 292. Although neither party raised the issue of whether § 1252(b)(9) deprived the Court of jurisdiction to consider those claims, the Supreme Court had "an 'independent obligation' to assess whether it" did indeed deprive the Court of jurisdiction. *Id.* at 315–16 (Thomas, J., concurring). Fulfilling that obligation, the plurality concluded that § 1252(b)(9) did not bar consideration of the "questions of law" before it. *Id.* at 292–95.

Having resolved the issue of jurisdiction, the Court turns its attention to the final threshold issue—exhaustion of administrative remedies.

### C.    The Court Will Not Require Mr. Marroquin to Exhaust His Administrative Remedies Before Proceeding Before This Court

Respondents note that Mr. Marroquin has a bond appeal pending before the BIA, (ECF No. 17 at 30), and they contend that this Court should require him to exhaust his administrative remedies and dismiss or stay this matter until he does. (*Id.* at 30–33). However, Respondents recognize that, in this case, exhaustion of administrative remedies is a prudential matter—it is not statutorily required. (*Id.* at 30).

"Exhaustion is the rule in most cases, and failure to exhaust will generally preclude habeas review." *Stokes v. Warden of FCI-Allenwood*, No. 1:24-CV-1048, 2024 WL 4567287 at *2 (M.D. Pa. Oct. 24, 2024) (citing *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 761 (3d Cir. 1996)); *see also Callwood v. Enos*, 230 F.3d 627, 643 (3d Cir. 2000) ("Although there is no statutory exhaustion requirement attached to § 2241, we have consistently applied an exhaustion requirement to claims brought under § 2241."). "Only in rare circumstances is exhaustion of administrative remedies not required." *Id.* For example, "exhaustion is unnecessary if the issue presented is one that consists purely of statutory construction." *Id.* (citing *Vasquez v. Strada*, 684 F.3d 431, 433–34 (3d Cir. 2012)). And exhaustion "is likewise not required when it would be futile." *Id.* (citing *Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982)).

---

What, then, does the plurality opinion in *Jennings* have to do with the case before this Court? The Court briefly answers that question.

The *Jennings* plurality operated from a position in which it was considering jurisdiction *sua sponte*. Further, § 1252(g) is a jurisdictional provision that the plurality mentioned in *Jennings*, 583 U.S. at 294, and that the plurality was also *duty-bound to consider sua sponte*. Yet, even after noting that it had to consider jurisdiction *sua sponte*, and even after mentioning § 1252(g), the plurality still found that *it was permitted to consider whether certain statutory provisions require detention without a bond hearing*, implying that § 1252(g) did not bar such consideration. Certainly, then, the plurality opinion in *Jennings* strongly supports this Court's decision to consider the legal questions implicated by the intersection of Petitioners' SIJ Status and their detention under § 1225, even given § 1252(g).

Here, as the Court's discussion below indicates, *see infra* Section III.B, a primary issue presently before the Court is whether Petitioners may be detained under § 1225, or instead under § 1226. Therefore, because this case hinges almost totally on statutory construction, the Court finds that exhaustion of administrative remedies is likely excused on that ground.

Further, as the Court discussed earlier, *see supra* Section I.A.3, the BIA has issued decisions in recent months that appear to resolve the legal issues that Mr. Marroquin would raise in his appeal to the BIA. In light of that fact, requiring Mr. Marroquin to exhaust his appeal to the BIA prior to litigating his claims before this Court is futile—such action by this Court would almost certainly result in the BIA persisting in its earlier rulings and applying those rulings to Mr. Marroquin, all while he remains in detention without the bond hearing due him. Therefore, the Court excuses exhaustion on the ground of futility as well.

Now that the Court has determined that: (1) Mr. Del Cid's claims remain properly before the Court, (2) § 1252(g) does not bar the Court's consideration of Petitioners' claims, and (3) it would be inappropriate to require Mr. Marroquin to finalize his appeal before the BIA prior to litigating his claims before this Court, the Court proceeds to address the merits of Petitioners' claims.

## III.    Discussion

### A. Legal Standard

As the Third Circuit has explained:

"Preliminary injunctive relief is an extraordinary remedy, which should be granted only in limited circumstances." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (internal quotation marks omitted). Under the familiar standard of proof, a party "seeking a preliminary injunction must establish that [he] is likely to succeed on the merits, that [he] is likely to suffer irreparable harm in the absence of preliminary injunctive relief, that the balance of equities tips in [his] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Generally, the moving party must establish

the first two factors and only if these gateway factors are established does the
district court consider the remaining two factors." *Greater Phil. Chamber of Com.
v. City of Phil.*, 949 F.3d 116, 133 (3d Cir. 2020) (internal quotation marks omitted).
If the gateway factors are met, "[t]he court then determines in its sound discretion
if all four factors, taken together, balance in favor of granting the requested
preliminary relief." *Id.* (internal quotation marks omitted).

*SEC v. Chappell*, 107 F.4th 114, 126 (3d Cir. 2024) (cleaned up).

Generally, a "'primary purpose of a preliminary injunction is maintenance of the status quo

until a decision on the merits of a case is rendered.'" *LVL Co., LLC v. Atiyeh*, 469 F. Supp. 3d 390,

413 (E.D. Pa. 2020) (citing *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994)). Thus, a

"'party seeking a mandatory preliminary injunction that will alter the status quo bears a particularly

heavy burden in demonstrating its necessity." *Id.* at 414 (citing *Acierno*, 40 F.3d at 653)).

**B.    Petitioners Have Shown a Likelihood of Success on the Merits of Their Claim
That They are (or were) Detained Under § 1226(a) and Therefore Entitled
to a Bond Hearing**

At the heart of Petitioners' requests for relief is their assertion that they are "subject to 8

U.S.C. § 1226 detention rather than § 1225 detention." (ECF No. 16 at 4). Because the Court finds

that Petitioners are correct on that issue, and because that holding resolves many of Petitioners'

other requests for relief, the Court first explains its finding that § 1226(a) governs: (1) Petitioners'

prior (in the case of Mr. Del Cid), (2) current (in the case of Mr. Marroquin), and (3) future (in the

case of Mr. Del Cid if he is re-detained under the same circumstances) detention.

When interpretating a statute, this Court's "job is to interpret the words consistent with

their 'ordinary meaning … at the time Congress enacted the statute.'" *Wis. Ctr. Ltd. v. United

States*, 585 U.S. 274, 277 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Indeed,

this Court's "analysis begins with the plain language of the statute[,]" and where that language is

"plain, [a court] must enforce it according to its terms." *Jimenez v. Quarterman*, 555 U.S. 113, 118

(2009); *see also United States v. Brow*, 62 F.4th 114, 119 (3d Cir. 2023) (noting that a "court

considers the language of a statute in its natural and ordinary signification and if there is no ambiguity or obscurity in its language, there will usually be no need to look elsewhere to determine its intent"). Further, statutory language "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 101 (2012) (internal quotation marks and citation omitted).

In considering whether § 1225 or § 1226 governs Petitioners' detention, the Court is not painting on a blank canvas. As this Court explained earlier, *see supra* Section I.A.2, the Supreme Court has tethered § 1225 to "the Nation's borders and ports of entry," noting that aliens detained pursuant to those provisions are typically detained during removal proceedings. *Jennings*, 583 U.S. at 287–88.[5] And the Supreme Court has tethered § 1226 to aliens "inside the United States," noting that § 1226(a) permits the Attorney General to release aliens on bond during their removal proceedings. *Id.* at 288–89; *id.* at 303 ("§ 1226 applies to aliens already present in the United States."). In sum, "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.* at 289.

This language from the Supreme Court leads this Court strongly in the direction of concluding that Mr. Del Cid—who had been in this country for approximately four years when he was arrested in Pennsylvania in 2025 and has SIJ Status—and Mr. Marroquin—who had been in

---

[5] The portions of *Jennings* that the Court cites in this paragraph all come from the parts of *Jennings* that were joined by a majority of the justices.

this country for over two years at the time he was arrested in Pennsylvania in 2025 and also has SIJ Status—*see supra* Section I.B, are subject to § 1226(a) rather than § 1225.

However, the Supreme Court's language above is not unyieldingly absolute,[6] and two points lead this Court to eschew any holding in this case that adopts a bright line rule for all of its future cases presenting questions about the distinction between § 1225 and § 1226.

The first point is that Petitioners themselves recognize that there might be some cases that "make this distinction [between which aliens are to be detained under § 1225 and which aliens are to be detained under § 1226] blur[, but] Petitioners' case is not one of them." (ECF No. 16 at 28–29). The second point is a provision within § 1225 itself. As the Supreme Court has explained, § 1225 contains an expedited removal procedure for any applicant who is: (1) "inadmissible because he or she lacks a valid entry document[;]" (2) "has not 'been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility[;]'" and (3) "is among those whom the Secretary of Homeland Security has designated for expedited removal." *DHS v. Thuraissigiam*, 591 U.S. 103, 108–109 (2020) (quoting §§ 1225(b)(1)(A)(i), (iii)(I)-(II)). Simply put, because of the open legal questions in this area, and because § 1225 contains a provision that permits expedited removal of individuals who have been present in the United States *for up to two years*, this Court declines to adopt a bright line rule that says § 1225 only applies to those at or immediately near the border and § 1226 applies to *all other* aliens within the interior of the United States. *Osorio-Martinez v. Att'y Gen. U.S.*, 893 F.3d 153, 173 (3d Cir. 2018) ("Although the INA allows the DHS to expeditiously remove certain aliens

---

[6] This Court specifically emphasizes the Supreme Court's statement that "U.S. immigration law authorizes the Government to detain *certain* aliens *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain *certain* aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c). *Jennings*, 583 U.S. at 289–90 (emphasis added) (noting that the Government had detained Rodriguez, *who was a lawful permanent resident of the United States*, under § 1226). In short, the Supreme Court's language contains a measure of equivocation about the level of definition relative to the categories of individuals to whom §§ 1225 and 1226 apply. This Court therefore includes a measure of equivocation in its holding as well.

apprehended up to two years after entering the United States and who were encountered anywhere within United States territory, *see* 8 U.S.C. § 1225(b)(1), it apparently has not, until recently, sought even standard removal, much less expedited removal, of SIJ designees while their applicants for adjustment of status were pending[.]").

While the Court does not adopt a bright line rule here, it need not do so in order to resolve the case now before it, for the following three reasons.

First, once again, *Jennings* does stand for the *general* principle that § 1225 is tethered closely to the border and § 1226 is tethered closely to the interior of the country. 583 U.S. 287–89.

Second, while the fact that § 1225(b)(1)'s expedited removal provision permits expedited removal of individuals who have been here for up to two years does weigh against a bright-line rule, that provision also suggests Congressional intent to tether § 1225 more closely to individuals with weaker ties to the United States. After all, an individual who has been here for one month clearly has weaker ties to this country than an individual who has been here for two years and one month, and Congress permitted expedited removal of the former but not the latter.[7]

Finally, the first part of the title of § 1225 is "Inspection by immigration officers[.]" Likewise, § 1225(a) is entitled "Inspection[.]" On the other hand, § 1226 is entitled "Apprehension and detention of aliens[.]" All of this confirms the Court's read of the two provisions—§ 1225 is tethered more closely to the border and applies more readily to someone with a weak connection

---

[7] The Court does recognize that § 1225 also contains a separate provision, in addition to § 1225(b)(1), that the Supreme Court has described as a "catchall"—§ 1225(b)(2). *Jennings*, 583 U.S. at 287. While this provision means that § 1225 as a whole can and may sweep more broadly than § 1225(b)(1) by itself, the Court's point is simply that § 1225 contains indicia that Congress intended the section to apply to aliens with less connection to the country than those who have been here for a substantial period of time.

to the country, while § 1226 is tethered more closely to the interior of the country and applies more readily to someone with a strong connection to the country.

How does all of that apply to Petitioners here? These principles strongly indicate, and in fact lead the Court to firmly conclude, that Congress intended Mr. Del Cid and Mr. Marroquin, who have both obtained SIJ Status and been present within the country for years, to be detained under § 1226(a), not § 1225.

Indeed, both individuals have obtained SIJ Status. That status "bespeak[s] a substantial legal relationship between them and the United States—a relationship far more significant than" the relationship possessed between an initial entrant into this country. *Osorio-Martinez*, 893 F.3d at 174.[8] Further, Mr. Del Cid was here for over four years when Respondents detained him in July 2025, and Mr. Marroquin was here for over two years as of that time. *See supra* Section I.B. The Court therefore readily infers that both Petitioners have begun making meaningful and substantial connections to this country. And third, neither Petitioner has a criminal record, *see supra* Section I.B, meaning that Petitioners have not violated either the public confidence placed in them[9] or the benefit conferred upon them via their SIJ Status. For all of these reasons, the Court holds that Petitioners have shown a very strong likelihood of success on the merits of their claim that Mr. Marroquin is currently detained pursuant to § 1226(a), not § 1225. Likewise, the Petitioners have

---

[8] Although the Court does not rest its holding today on the canon of constitutional avoidance, it does note it here. That canon provides that, when "'a serious doubt' is raised about the constitutionality of an Act of Congress, 'it is a cardinal principle that [the] Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Jennings*, 583 U.S. at 296 (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). While the Court in no way holds that § 1225 would be unconstitutional as-applied to these Petitioners, it does have questions about such an application *to those with SIJ Status* in light of *Osorio-Martinez*, 893 F.3d 153. The Court therefore simply notes that the canon of constitutional avoidance leads it even more firmly in the direction of finding that § 1225 does not apply to Mr. Del Cid and Mr. Marroquin given their particular facts and circumstances, but § 1226(a) does.

[9] An individual may only receive SIJ Status after satisfying "a set of rigorous, congressionally defined eligibility criteria," and receiving approval from "USCIS and the consent of the Secretary of Homeland Security[.]" *Osorio-Martinez*, 893 F.3d at 163.

shown a very strong likelihood of success on the merits of their claim that, so long as Mr. Del Cid is re-detained while he possesses SIJ Status and no criminal record, he may only be detained pursuant to § 1226(a), not § 1225.

Critically, Federal Regulations "provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Therefore, the Court will order Respondents to provide Mr. Marroquin with a bond hearing consistent with § 1226(a) and all related provisions of law within seven (7) days of this Opinion. Likewise, in the event Respondents elect to re-detain Mr. Del Cid in the future, and in the event that he still has SIJ Status and no criminal record at that time, the Court will order Respondents to provide Mr. Del Cid with a bond hearing consistent with § 1226(a) and all related provisions of law within seven (7) days of such re-detention.

The Court finds that these conclusions address the first two items of injunctive relief that Petitioners seek. *See supra* Section I.C. With respect to their three remaining requests, the Court notes that "the due process afforded aliens stems from those statutory rights granted by Congress and the principle that minimum due process rights attach to statutory rights." *Osorio-Martinez*, 893 F.3d at 172 (cleaned up). In light of the law surrounding SIJ Status, *see supra* Section I.A, the Court holds that granting Mr. Marroquin a bond hearing within seven (7) days (and ordering that Mr. Del Cid is subject to § 1226(a) and thus entitled to a bond hearing if re-detained in the future while still possessing SIJ Status and no criminal record) adequately takes stock of Petitioners' rights under the Due Process Clause at this time. *Cortez-Amador v. Att'y Gen.*, 66 F.4th 429, 433 n.12 (3d Cir. 2023) ("*Osorio-Martinez* … did not hold that SIJS recipients are exempt from removal due to inadmissibility, but only that Congress intended to provide SIJS recipients with an opportunity to pursue adjustment of status."). Such a bond hearing will enable them an opportunity

to raise their claims regarding their pending applications for adjustment of status and the like. The Court therefore finds that Petitioners' other requests for relief are mooted given the Court's holding today, beyond the scope of the relief to which Petitioners are currently entitled, or both. *See supra* Section I.A; *Inlago Tocagon v. Moniz*, No. 25-CV-12453, 2025 WL 2778023, at *5 (D. Mass. Sept. 29, 2025) (finding that the appropriate remedy for a detained alien with SIJ Status was a bond hearing under § 1226(a) within ten (10) days).

In short, the Court holds that Petitioners have shown a very strong likelihood of success on the merits that § 1226(a) governs their current/future detention, not § 1225, given their unique circumstances. The Court will therefore order Respondents to provide Mr. Marroquin an appropriate bond hearing within seven (7) days. If Respondents re-detain Mr. Del Cid in the future, and if his relevant circumstances remain the same at that time, they shall likewise provide him with a bond hearing within (7) days of any such re-detention. The Court denies Petitioners' requests for relief in all other respects at this time, finding that they have failed to show a likelihood of success on the merits on those issues in light of the law above and the relief that the Court is granting. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) ("[A] movant for preliminary equitable relief *must* meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits … and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief. *If these gateway factors are met*, a court then considers the remaining two factors[.]") (emphasis added).

### C.    The Remaining Factors Support the Grant of a Preliminary Injunction Finding That § 1226(a), Not § 1225 Applies to Petitioners and Requiring Respondents to Afford Mr. Marroquin a Bond Hearing

Turning to the remaining preliminary injunction factors, there is precedent, in the immigration context, for the principle that "unlawful detention is a sufficient irreparable injury."

*Hernandez v. Sessions*, 872 F.3d 976 994–95 (9th Cir. 2017); *but see DSSA v. DDSHS*, 108 F.4th 194, 204–05 (3d Cir. 2024) ("Thus, when weighing preliminary injunctions, courts may presume that suppressing speech or worship inflicts irreparable injury. But this presumption is the exception, not the rule."). Here, the Court has no need to presume irreparable injury as it has found that Petitioners are entitled to a bond hearing, and Mr. Marroquin is currently detained without one, meaning that that aspect of his detention is unlawful.[10] Further, detention without a bond hearing undoubtedly deprives Petitioners of the opportunity to continue to advance their pending applications for adjustment of status. *See supra* Section I.B. On these facts, the Court finds that Petitioners have clearly shown a likelihood of irreparable harm in the absence of injunctive relief.

Turning to the third and fourth factors, it is squarely in the public interest to enable individuals to partake of statutory and constitutional rights and meaningful judicial review where, as here, it is consistent with the process prescribed by Congress." *Osorio-Martinez*, 893 F.3d at 179. Further, because neither Mr. Marroquin nor Mr. Del Cid has a criminal history, the Court finds that the public interest is not harmed by their receiving a bond hearing and potentially being out of detention while any removal proceedings are continued as against them.

Therefore, the Court grants in part and denies in part Petitioners' request for a preliminary injunction.

Finally, the Court finds that the nominal bond of $1.00 that it previously required Petitioners to post remains appropriate in light of all relevant legal principles. *A.S.R. v. Trump*, 782 F. Supp. 3d 224, 253 (W.D. Pa. 2025).

---

[10] Likewise, Mr. Del Cid's prior detention without a bond hearing, as well as any future detention while he still has the same circumstances without a bond hearing, constitutes irreparable harm.

IV.     **Conclusion**

Having considered the entire record in this case and the relevant legal principles, the Court holds that Petitioners are entitled to two pieces of injunctive relief. First, the Court finds that Mr. Marroquin may not be detained pursuant to § 1225, but rather is detained pursuant to § 1226(a). Likewise, in the event that Respondents elect to re-detain Mr. Del Cid in the future, and in the event that he still has SIJ Status and no criminal record at that time, he may not be detained pursuant to § 1225, but rather § 1226(a) alone. Second, the Court finds that Mr. Marroquin is entitled to a bond hearing under § 1226(a) and all related legal principles within seven (7) days of this Opinion. If Respondents re-detain Mr. Del Cid in the future, and if he still has SIJ Status and no criminal record at that time, Respondents shall likewise provide him with a bond hearing under § 1226(a) and all related legal principles within seven (7) days of his re-detention. The Court finds that Petitioners' other claims are unavailing at this time.

An appropriate Order follows.

DATED: October 23, 2025

STEPHANIE L. HAINES
U.S. DISTRICT COURT JUDGE